IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA DIVISION

| | |
|---|---|
| **ABIRA MEDICAL LABORATORIES,** § <br> **LLC d/b/a GENESIS DIAGNOSTICS** § <br> § <br> vs. § <br> § <br> **MARIA J. KARIM** § <br> § | **CIVIL ACTION NO. 2:20-CV-04317** |

## REPORT OF RULE 26(F) MEETING

In accordance with Federal Rule of Civil Procedure 26(f), counsel for the parties conferred on March 23, 2021 and submit the following report of their meeting for the court's consideration:

**I.      Counsel**

      A.     Lead counsel for Plaintiff:    David W. Ghisalbert

      B.     Lead counsel for Defendant:  Ejaz A. Sabir

      C.     Counsel who participated in Rule 26(f) conference on behalf of Plaintiff:

          David W. Ghisalbert

      D.     Counsel who participated in Rule 26(f) conference on behalf of Defendant:

          Ejaz A. Sabir

**II.     Description of Claims and Defenses**

      A.     **Plaintiff's Position**

Plaintiff Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics ("Genesis") is a foreign limited liability company organized under the laws of the State of New Jersey. Genesis' principal place of business is located in Langhorne, Bucks County, Pennsylvania. It holds a Pennsylvania medical laboratory license, and it provides clinical laboratory, pharmacy, genetics, and addiction rehabilitation testing services at its facilities in Langhorne, Pennsylvania for thousands of patients located throughout the United States (the "Laboratory Testing Services"), generally upon the referral of a medical service provider.

Genesis employs approximately 225 employees, including, but not necessarily limited to physicians, scientists, technicians, sales representatives, administrative and financial support personnel. The Laboratory Testing Services performed by that personnel are primarily billed to a patient's third-party insurer, or to Medicare/Medicaid. In the event of no insurance coverage, the Laboratory Testing Services are billed directly to a patient. In the case at chief, four (4) of Genesis' employees who were primarily responsible for patient billing and overall records management and control are Messrs. Alan Ace, the accounts billing manager, Harry Myles, Vice-President of Operations, as well as Tessler Brown and Kevin Rox. These employees had full access to all of Genesis' patient and billing records, proprietary business information, and confidential business practices.

Interlab, LLC was a medical testing laboratory based out of St. Charles County, Missouri. Interlab, LLC was owned by Malik Karim, the husband of Defendant Maria J. Karim. Mr. Karim filed a chapter 7 bankruptcy proceeding in 2019 due to several federal tax liens that had been assessed by the IRS against Interlab, LLC.[1] At the time those tax liens were assessed, Ms. Karim was the billing and accounts manager for Interlab, LLC.

Ms. Karim had been the organizer for Interlab, LLC. She handled all legal filings for Interlab, LLC, as well as all billing and accounts payable for that company. She handled those matters through her wholly owned limited liability company, Interlab Billing, LLC. In short, Ms. Karim was quite familiar with both legal and medical billing/accounting matters. What she didn't have in 2019 as a result of her husband's Chapter 7 bankruptcy proceeding, and the liquidation of Interlab, LLC, was a business to produce income opportunities in the medical billing field. She reached out to Genesis' employees to fix that problem.

Ms. Karim's LinkedIn account reflects that her current employment position is "Administrator, Professional Home Health Agency." See attached Plaintiff's Exhibit 1. This amounts to a public acknowledgement that Ms. Karim has continued with her medical billing practice subsequent to the demise of Interlab, LLC. Ms. Karim has admitted that she knew Messrs. Alan Ace, Harry Myles, Tessler Brown, and Kevin Rox. See attached Plaintiff's Exhibit 2. In that connection, Ms. Karim stated the following on this matter:

> I knew these guys from my previous billing company. We wanted to start something together back in 2019 which didn't happen as they chose to work with another company (They never mentioned Genesis Diagnostics back then).

*See* Exhibit 2. This exhibit reflects that Ms. Karim not only knew Genesis' employees, and communicated with them regarding the formation of a new company, but it also reflects that the communications took place in 2019, after the IRS had assessed tax liens against Interlab, LLC, and just before her husband and former company filed a Chapter 7 bankruptcy proceeding. It is

---

[1] *In re Malik Karim and Interlab, LLC*: Chapter 7 Bankruptcy Case Number 19-47736; in the United States Bankruptcy Court for the Eastern District of Missouri. Case filed December, 2019.

clear that Ms. Karim at that time was seeking a life preserver to jump off the sinking ship that was Interlab, LLC, and she was soliciting Genesis' employees as a means to accomplish that task.

At the time that Ms. Karim began soliciting the participation of Genesis' employees – i.e., Messrs. Ace, Myles, Tessler, and Box – to form a new medical service company, those four (4) men were contractual employees of Genesis. Their written employment agreements contained non-compete, non-solicitation, and preservation of confidential/proprietary information clauses in each of their contracts.

The Plaintiff contends that Ms. Karim knew that these men were employees of Genesis, and thus any attempt on her part to solicit their participation in the forming of a new medical service company constituted acts of tortious interference with Genesis' employees. Moreover, any attempt on Ms. Karim's part to utilize the participation of Messrs. Ace, Myles, Tessler, and/or Rox for the referral of a number of the Plaintiff's clients to Defendant's new business venture would have constituted further acts of tortious interference and/or acts of unfair competition. Lastly, any funds received by Ms. Karim which were paid from a client, or prospective client of Genesis would give rise to a claim for conversion of those funds.

      **B.**      <u>**Defendant's Position**</u>

Maria Karim was married to Malik Karim who might have established Interlab LLC. Maria Karim did assist her former husband in Interlab, LLC but has no share and or any interest in Interlab, LLC. Maria Karim has no contractual relationship with the plaintiff and/or its employees.

There is no agreement, memorandum and or restriction from the plaintiff to Maria Karim that she was not allowed to communicate with Messrs. Alan Ace, Harry Myles, Tessler Brown, and Kevin Rox. If there was any communication with Messrs. Alan Ace, Harry Myles, Tessler Brown, and Kevin Rox, it had no bearing on the plaintiff's business let alone tortious interference with the contract, improper inducement of another's employees, and unlawful use of confidential information.

Maria Karim is a school teacher and single mother of three children who does not have time to update her social media- Let alone a LinkedIn profile.

**III.**    **Anticipated Scope of Discovery**

      A.      Summary of Discovery Positions

            **1.**      <u>**Plaintiff's Position**</u>

                    Genesis takes the position that fact discovery will be required for all claims and defenses asserted in this lawsuit. Specific issues of discovery will include, but not necessarily be limited to Defendant's interactions with

                Messrs. Ace, Myles, Tessler, and Rox, as well as the solicitation of Plaintiff's clients and/or prospective clients, and the calculation of damages associated therewith.

        **3.**      **<u>Defendant's Position</u>**

                Maria Karm is not the right defendant because there is no contractual duty for Maria Karim not to communicate with Messrs. Alan Ace, Harry Myles, Tessler Brown, and Kevin Rox for any stretch of the imagination, if there was any restriction of such communication then there is no direct and or indirect loss and or damage to the plaintiff of said communication.

    B.    Anticipated number of interrogatories per Party:    25 or less

    C.    Anticipated number of depositions per Party:    2 – 5.

    D.    Neither the Plaintiff nor the Defendant propose to exceed the presumptive limits set forth within the Federal Rules of Civil Procedure regarding discovery.

    E.    The parties do not anticipate at this time a need for third-party discovery. If such a need should arise, the anticipated likely parties could include several third-party medical service provider clients of Genesis; and the discovery sought from such parties could include information concerning Defendant's solicitation of those persons or entities.

    F.    The parties do not anticipate designating experts in this case, other than potential experts regarding valuation of damages, and/or counsel opining on the value of attorney's fees incurred in this case.

**IV.**    **Status of Discovery**

    The parties are presently preparing their initial disclosures under Rule 26(a) of the Federal Rules of Civil Procedure. It is anticipated that those disclosures will be exchanged between the parties prior to the Rule 16 Scheduling Conference docketed in this case for March 31, 2021.

**V.**    **Proposed Case Management Deadlines**

    A.    Deadline to serve initial disclosures under Rule 26(a)(1):    March 30, 2021

    B.    Deadline to amend pleadings to add claims or Parties:    April 21, 2021

    C.    Deadline to complete fact discovery:    July 31, 2021

|     |     |     |     |
| --- | --- | --- | --- |
| D. | Deadline for affirmative expert reports (if any) and disclosure of lay witness opinion testimony with related information and documents (if any): | | August 31, 2021 |
| E. | Deadline for rebuttal expert reports (if any): | | September 14, 2021 |
| F. | Deadline to complete expert discovery: | | October 14, 2021 |
| G. | If any Party seeks more than 120 days for fact discovery, explain why. | | N/A |
| H. | Deadline to file motion for summary judgment: | | November 14, 2021 |

## VI. Deposition Scheduling

A. Have the Parties set aside dates for deposition?

No

B. If yes, what are those dates?

Unknown at this time.

C. If no, when do the parties intend to confer, and how many dates do they intend to set aside?

The parties intend to confer after the exchange of written discovery. The parties expect to set aside 3 – 4 dates for the potential depositions.

## VII. Electronic Discovery

The Parties do not anticipate any undue difficulty or disagreement on how to conduct electronic discovery. To the extent they have not already done so, the Parties will preserve all electronic records related to this matter and instruct their agents, employees, vendors, consultants, contractors and public adjusters to do the same. Electronic records will be produced in .PDF format, hard copy, or other form to which the Parties mutually agree. Each Party will bear their own costs for producing electronic information, unless otherwise ordered by the Court.

## VIII. Protective Orders and Confidentiality Agreements

Plaintiff anticipates the need for a protective order in this case. Plaintiff believes information including, but not necessarily limited to its client base, laboratory procedures, medical billing information, and HIPPA related matters, amongst others, should be protected. This case primarily involves claims of tortious interference, unfair competition, and usurpation of

information proprietary to a party. Under these circumstances, a protective order may be warranted to prevent the usurpation of interests protected via non-disclosure and confidentiality clauses contained in Plaintiff's employment contracts with its employees.

## IX. Alternative Dispute Resolution

    A.    Have the Parties engaged in any settlement discussions?

        Yes

        If so, set forth the status of those negotiations.

        The parties have exchanged offers. Negotiations are continuing.

    B.    Have the Parties explored or considered other forms of alternative dispute resolution?

        Yes

        If so, summarize those efforts. If not, state the Parties' positions with respect to ADR, as required under Local Rule of Civil Procedure 53.3.

        The Parties discussed alternative dispute resolution during telephone conferences held on March 17, 2021. The parties are willing to discuss an early resolution and participate in a settlement conference. The Parties believe a settlement conference would be most productive after initial discovery and the issues and positions have been fairly disclosed. Both Parties are open to the possibility of early settlement. The Parties are familiar with Local Rule 53.3.

    C.    Identify the individual who will attend the Rule 16 conference who will have authority to discuss settlement.

        Plaintiff –    David W. Ghisalbert, counsel for the Plaintiff

        Defendant –    Ejaz A Sabir, counsel for the Defendant

## X. Consent to Send Case to a Magistrate Judge

    The Parties consent to a United States Magistrate Judge conducting matters related to pre-trial and/or ADR to the extent such consent is consistent with 28 U.S.C. § 636(b)(1). The parties do not consent to trial, motions for injunctive relief, motions for summary judgment, Rule 12(b) motions, and/or involuntary dismissal of a civil action.

## XI.    Policies and Procedures

      Judge Marston's Policies and Procedures are available for the Parties to review on the Court's website. By signing below, counsel for each Party and/or each *pro se* Party represents that he or she has reviewed the Judge's Policies and Procedures and acknowledges the requirements contained therein. The Parties and their counsel further acknowledge by signing below that Judge Marston will strike pleadings and other submissions that do not comply with her Policies and Procedures.

## XII.   Other Matters

      No other pretrial matters are known to the Parties at this time.


DATED:      March 24, 2021


| | |
|---|---|
| / S / D.W. Ghisalbert | / S / Ejaz A. Sabir |
| David W. Ghisalbert (PA Id. No. 328557) | Ejaz A. Sabir (PA Id. No. 92147) |
| Law Office of David W. Ghisalbert | Sabir Law Group |
| 2000 Bering Drive, Suite 700 | 6454 Market Street |
| Houston, Texas 77057 | Upper Darby, Pennsylvania 19082 |
| (713) 808-9697 [telephone] | (610) 713-9000 [telephone] |
| (713) 893-6942 [facsimile] | (610) 713-9500 [facsimile] |
| dghisalbert@dwglawoffice.com [email] | Ejaz@sabirlaw.com [email] |
| | |
| COUNSEL FOR PLAINTIFF, | COUNSEL FOR DEFENDANT, |
| ABIRA MEDICAL LABORATORIES, LLC | MARIA J. KARIM |
| D/B/A GENESIS DIAGNOSTICS | |

## CERTIFICATE OF SERVICE

 I hereby certify that on March 24, 2021, a true and correct copy of the foregoing document was filed with the clerk of the Court using the CM/ECF System which will send notification to all counsel of record.

                / S /  D.W. Ghisalbert
                David W. Ghisalbert (PA Id. No. 328556)

# EXHIBIT "1"







Home My Network Jobs

A High ROI pre-IPO? - TransparentBusiness has reached $1.6B pre-IPO Unico

Connect Message •••

# Maria Karim

Administrator at Professional Home Health Agency

St Charles, Missouri, United States · Contact info

Professional Home Health Agency

Get the LinkedIn app and see more profiles like Maria's anytime, anywhere

dghisalbert@dwglawoffice.com

Send me a link

Or send me an SMS instead

Maria Karim
Administrator at ...

## Activity

Posts Maria created, shared, or commented on in the last 90 days are displayed here.

See all activity

## Experience

**Administrator**
Professional Home Health Agency

| About | Accessibility | Talent Solutions | Questio |
| --- | --- | --- | --- |
| Community Guidelines | Careers | Marketing Solutions | Visit our |
| Privacy & Terms | Ad Choices | Advertising | Manage and priv |
| Sales Solutions | Mobile | Small Business | Go to your |
| Safety Center | | | |

LinkedIn Corporation © 2021

**EXHIBIT "2"**

**From:** Maria Karim <mariakarim0008@gmail.com>
**Sent:** Thursday, August 13, 2020 6:15:47 PM
**To:** David Ghisalbert <dghisalbert@dwglawoffice.com>
**Subject:** Respond regarding Cease and Desist

RE: Denial of Claims and Affirmative Statement

Dear Mr. Ghisalbert,

This response is to your cease and desist letter received on the 28th day of July 2020. I, Maria Karim, hereby deny each and every allegation set forth in your cease and desist letter, including but not limited to, the claim that you suggest I have formed a company by name ElyteMed LLC recently and illegally hired three of your employees named Harry Myles, Tessler Brown and Kevin Rox, and ElyteMed LLC has a medical testing laboratory billing contract with a company named "Redwood".

Please be informed that I don't own any company with the name ElyteMed LLC in Missouri state ever. I had no idea who Genesis Diagnostics is and how that is related to Tessler, Harry and Kevin until recently, I knew these guys from my previous billing company. We wanted to start something together back in 2019 which didn't happen as they chose to work with another company (They never mentioned Genesis Diagnostics back then).

**Affirmative Statement**

I have nothing to do with all this mess between Genesis and three of its employees, I have no idea what they are doing with their lives. I must work two jobs to make my living and I can't take this anymore. I have been subjected to unnecessary calls, text messages and now with cease and desist letter, all this is because I agreed to help them in resolving their misunderstanding between Genesis and them. I am sincerely requesting you to keep me away from this nonsense, else. I would consider this as harassment and will take legal help against Genesis Diagnostics and its three employees who took advantage of my kindness.

AND, there is no truth in ElyteMed LLC having a contract with a company named "Redwood" When ElyteMed itself is not registered. It's funny because I don't even know what Redwood is and who owns it.

For these reasons it has been concluded that the claims made in your cease and desist letter are invalid.

Sincerely,

Maria Karim

Reply    Reply all    Forward