# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **ABIRA MEDICAL LABORATORIES, LLC, d/b/a GENESIS DIAGNOSTICS,** | **CIVIL ACTION** |
| Plaintiff, |  |
| *v.* | **NO. 20-4317-KSM** |
| **MARIA J. KARIM, et al.,** |  |
| Defendant. |  |

## MEMORANDUM

**MARSTON, J.**                                                    **January 5, 2022**

Plaintiff Abira Medical Laboratories, LLC (doing business as Genesis Diagnostics) ("Genesis") filed this suit against Defendants Maria J. Karim, Medcurative, LLC, and Interlab Billing, LLC (collectively, the "Defendants"), alleging that they used Genesis's employees and misappropriated confidential information stored on Genesis's computer servers to steal Genesis's clients. (Doc. No. 25.) Genesis brings four claims against Defendants: tortious interference, unfair competition, conversion, and civil conspiracy. (*Id.*)

Defendant Karim has moved to dismiss Plaintiff's first amended complaint on four grounds.[1] (Doc. No. 29.) First, she argues that the Court lacks subject matter jurisdiction over

---

[1] Although Karim is the "sole managing member and agent for service" of both Medcurative and Interlab Billing (Doc. No. 25 ¶¶ 6–7), and although Genesis effected service on both companies by serving Karim (Doc. Nos. 33 & 34), Karim's attorney does not represent either company, and neither company has entered an appearance in this matter. It is well-settled that "a corporation must be represented by counsel." *Mazzoni v. United States*, No. Civ.A. 2:05-CV-5743, 2006 WL 1564020, at *1 (citing *Simbraw, Inc. v. United States*, 367 F.2d 373, 373–74 (3d Cir. 1996)). Indeed, "a corporation may not appear pro se and may not be represented by anyone other than licensed counsel." *Id.* (citing *Pa. Bus. Bank v. Biz Bank Corp.*, 330 F. Supp. 3d 511, 513 (E.D. Pa. 2004)).

Neither Medcurative nor Interlab Billing has filed a responsive pleading. Genesis requested default against Medcurative and Interlab Billing on September 10, 2021, and the Clerk of Court entered default on the same day. (Doc. No. 42.) However, Genesis has not yet moved for default judgment

this case because Genesis has failed to allege that the amount in controversy exceeds $75,000. (*Id.* at 5–6.)  Second, Karim argues that this case should be dismissed for lack of personal jurisdiction because she is a citizen of and conducted all relevant activities in Missouri and thus lacks sufficient minimum contacts with Pennsylvania.  (*Id.* at 2–5.)  Third, she argues that venue is improper because a substantial portion of the alleged acts and omissions giving rise to the claims did not occur in Pennsylvania.  (*Id.* at 5.)  Finally, Karim argues that this case should be dismissed because Genesis has failed to state a claim upon which relief can be granted.  (*Id.* at 6–7.)  Genesis opposes the motion.  (Doc. No. 30.)

For the reasons below, Karim's motion is granted in part and denied in part.

## I.   BACKGROUND

Taking the allegations plead in the amended complaint or averred in the affidavit of Abraham Miller, Genesis's Vice President for Research & Development,[2] as true, the relevant facts are as follows:

Genesis is a medical testing laboratory limited liability company registered under the laws of New Jersey with its principal place of business in Langhorne, Pennsylvania.  (Doc. No. 25 ¶ 4.)  Specifically, Genesis provides clinical laboratory testing services to medical service

---

against either Medcurative or Interlab Billing.

[2] "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  This means that, typically, courts will not consider affidavits filed in response to a motion to dismiss, choosing instead to dismiss the complaint and, in some instances, allow the plaintiff to refile it to the extent the plaintiff is able to plead facts that cure the complaint's original deficiencies.  *E.g.*, *Johns v. Northland Grp., Inc.*, 76 F. Supp. 3d 590, 602 n.5 (E.D. Pa. 2014).  However, in responding to a motion to dismiss for lack of personal jurisdiction, a plaintiff "may rely on the allegations in the complaint, affidavits, or other evidence."  *Sciortino v. Jarden, Inc.*, 395 F. Supp. 3d 429, 434 (E.D. Pa. 2019); *see also TruePosition, Inc. v. LM Ericsson Tel. Co.*, 844 F. Supp. 2d 571, 587 (E.D. Pa. 2012).  Accordingly, the Court will consider the affidavit of Abraham Miller (Doc. No. 30-1), which was attached as an exhibit to Plaintiff's response in opposition to the motion to dismiss.

providers throughout the country out of its Langhorne, Pennsylvania headquarters.  (*Id.* ¶¶ 11–12.)  Genesis stores records, including referral contracts with third-party providers, billing records, and invoices, on a centralized computer database at its headquarters.  (*Id.* ¶¶ 13–14.)  Certain employees in Genesis's billing department have unfettered access to Genesis's entire catalog of records:  Harry Myles, Tessler Brown, and Kevin Rox.  (*Id.* ¶ 15.)  All of these employees executed employment agreements that include non-compete and non-solicitation clauses, as well as clauses that require them to "maintain and preserve confidential information proprietary to [Genesis's] business."  (*Id.* ¶ 16.)

Karim is an individual residing in Missouri.  (*Id.* ¶ 5.)  Karim's husband, Malik Karim,[3] previously owned Interlab, LLC, a medical testing company based out of Missouri that was a direct competitor of Genesis's.  (*Id.* ¶ 17.)  Karim was employed as Interlab's billing and accounts manager.  Then, in 2018, when Interlab was on the brink of bankruptcy,[4] Karim founded Interlab Billing and Medcurative (both of whom are also defendants in this case).  (*Id.* ¶¶ 17–18.)  Interlab Billing and Medcurative solicited business from medical service providers on behalf of third-party laboratory testing facilities.  (*Id.* ¶ 19.)  The third-party laboratories would use Interlab Billing and Medcurative to bill insurers for testing services rendered and would pay Interlab Billing and Medcurative a share of the fees earned on testing business that Interlab Billing and Medcurative had originated.  (*Id.*)

In 2019, Karim, who had previously worked with Myles, Brown, and Rox in her position at Interlab, reached out to Myles, Brown, and Rox, who she knew to work for Genesis, asking

---

[3] Karim claims that she has since divorced her husband (Doc. No. 29 at 1); however, the Court must take the allegations in the amended complaint as true and assume that Defendant Karim is still married to Malik Karim (Doc. No. 25 ¶ 17).

[4] *See In re Malik Karim and Interlab, LLC*, No. 19-47736 (D. Mo.).

them to join her new ventures, to share confidential customer information with Karim, and to redirect business away from Genesis to Interlab Billing and Medcurative. (*Id.* ¶¶ 20–21.) Myles, Brown, and Rox have full access to Genesis's computer servers, located in Genesis's Pennsylvania headquarters. (*Id.* ¶¶ 13–15.) After Karim induced Myles, Brow, and Rox to share confidential customer information, one of Genesis's customers, Redwood Lab Services LLC ("Redwood"), terminated its agreement with Genesis and entered into an agreement with Interlab Billing and Medcurative. (*Id.* ¶ 23.) The loss of the Redwood contract cost Genesis over $150,000 in testing revenue. (*Id.*)

## II.   ANALYSIS

Karim has moved to dismiss the case for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim. (*See* Doc. No. 29.) The Court considers each of Karim's arguments in turn.

### A.   *Subject Matter Jurisdiction*

As a threshold matter, the Court must determine whether we have subject matter jurisdiction. Genesis asserts that the Court has diversity jurisdiction over this case. (Doc. No. 25 ¶ 8.) Under 28 U.S.C. § 1332, this Court has jurisdiction over actions where the amount in controversy is greater than $75,000 and the plaintiff and defendants are citizens of different states. Karim tacitly admits that there is complete diversity between Genesis and Defendants but argues that the Court lacks subject matter jurisdiction because there is not "a single iota of evidence" that the amount in controversy exceeds $75,000. (See Doc. No. 29 at 5.)

The amount in controversy is determined from the complaint itself. *Angus v. Shiley Inc.*, 989 F.2d 142, 145 (3d Cir. 1993). "The sum claimed . . . controls if the claim is apparently made in good faith." *State Farm Mut. Auto. Ins. Co. v. Powell*, 87 F.3d 93, 96 (3d Cir. 1996) (quoting

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)).  An amount in controversy is considered to have been claimed in "good faith" unless it can be shown "to a legal certainty that the claim is really for less than the jurisdictional amount."  *Id.*; *see also Brady v. Middle E. Forum*, No. CIVIL ACTION NO. 21-2252, 2021 WL 5003335, at *4 (E.D. Pa. Oct. 28, 2021) (holding that the plaintiff satisfied the amount in controversy requirement where the "damages plead[ed] in her complaint in the aggregate exceed[ed] the jurisdictional threshold" and there was no legal certainty that she would be unable to recover those amounts); *Krauss v. Steelmaster Bldgs., LLC*, No. CIVA 06-796, 2006 WL 3097767, at *2 (E.D. Pa. Oct. 27, 2006) (holding that the plaintiffs satisfied the amount in controversy requirement where they asserted $128,000 in potential damages and there was no legal certainty that they would be unable to recover that amount).

Genesis's amended complaint alleges that the amount in controversy is greater than $150,000 (well in excess of the $75,000 threshold), and there is no legal certainty that they would be unable to recover that amount.  Accordingly, the Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

## B.    *Personal Jurisdiction*

Next, Karim argues that the case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) because the Court lacks personal jurisdiction.  "The burden of demonstrating the facts that establish personal jurisdiction falls on the plaintiff," *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (cleaned up), and the plaintiff must do so with "reasonable particularity," *Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.3d 1217, 1223 (3d Cir. 1992).  In reviewing a motion to dismiss for lack of personal jurisdiction, "a court must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the

plaintiff." *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).

A district court may exercise personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state in which the court sits. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007); *see also Mellon Bank*, 960 F.2d at 1221. Pennsylvania's long-arm statute authorizes courts to assert personal jurisdiction to the fullest extent allowed under the United States Constitution. 42 Pa. Stat. & Cons. Stat. Ann. § 5322(b); *see also D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009); *O'Connor*, 496 F.3d at 316. Under the Due Process Clause of the Fourteenth Amendment, for a court to exercise personal jurisdiction over a non-resident defendant, the defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citation omitted).

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *O'Connor*, 496 F.3d at 317. "General jurisdiction is all-purpose" in that it "allow[s] a court to exercise jurisdiction over the defendant for any claim lodged against that party." *PPG Indus., Inc. v. Jiangsu Tie Mao Glass Co.*, 2:15-cv-00965, 2020 WL 1526940, at *3 (W.D. Pa. Mar. 31, 2020). Because Karim is a citizen of Missouri and is not at home in Pennsylvania, she is not subject to the general jurisdiction of this Court.

Specific jurisdiction exists where the claims arise from or relate to the defendant's contacts with the forum state. *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1998). "Because this analysis depends on the relationship between the claims and contacts, we generally evaluate specific jurisdiction on a claim-by-claim basis." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citation omitted); *see also Vizant Tech., LLC v. Whitchurch*, 97 F. Supp. 3d 618,

628 (E.D. Pa. 2015).  In general, to determine whether specific jurisdiction exists, courts consider whether (1) the defendant "purposefully directed its activities at the forum"; (2) the litigation "arise[s] out of or relate[s] to at least one of those activities"; and (3) if "the exercise of jurisdiction otherwise comports with fair play and substantial justice."  *O'Connor*, 496 F.3d at 317 (quotation marks and citations omitted); *see also D'Jamoos*, 566 F.3d at 102.

In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court instructed that courts may have specific jurisdiction over intentional tort claims even where they would lack specific jurisdiction under the standard inquiry and "endorsed a test of specific jurisdiction which places the emphasis upon the *effects* of a defendant's actions in the forum state."  *See Vizant Techs.,* , 97 F. Supp. 3d at 628  (emphasis added).  In the wake of *Calder*, the Third Circuit explained that a plaintiff may show that personal jurisdiction exists if it satisfies the following three elements: "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity."  *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (quoting *IMO Indus.*, 155 F.3d at 265–66).  This is known as the "effects test."  *Id.*

The "effects test" allows a plaintiff to "demonstrate a court's jurisdiction over a defendant even when the defendant's 'contacts with the forum alone . . . are too small to comport with the requirements of due process' under [the] traditional analysis."  *Id.*; *see also IMO Indus.*, 155 F.3d at 265 (explaining that *Calder* recognized that "the unique relations among the defendant, the forum, the intentional tort, and the plaintiff may under certain circumstances render the defendant's contacts with the forum—which otherwise would not satisfy the

requirements of due process—sufficient"). Nevertheless, "*Calder* did not change the fact that even in intentional tort cases the jurisdictional inquiry 'focuses on the relations among the defendant, the forum, and the litigation.'" *IMO Indus.*, 155 F.3d at 265 (citation omitted). "Nor did *Calder* carve out a special intentional torts exception to the traditional specific jurisdiction analysis, so that a plaintiff could always sue in his or her home state." *Id.*; *see also Marten*, 499 F.3d at 298 ("[T]he state of a plaintiff's residence does not on its own create jurisdiction over nonresident defendants.").

Accordingly, the mere fact that a plaintiff suffers harm in the forum state is not enough to give rise to personal jurisdiction in that state. *See, e.g.*, *Marten*, 499 F.3d at 297 ("Even if a defendant's conduct would cause foreseeable harm in a given state, such conduct does not necessarily give rise to personal jurisdiction in that state."); *IMO Indus.*, 155 F.3d at 265 ("[J]urisdiction under *Calder* requires more than a finding that the harm caused by the defendant's intentional tort is primarily felt within the forum."). Rather, to establish that a defendant "expressly aimed" his conduct at the forum state, the plaintiff must show "the defendant *knew* that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, *and point to specific activity* indicating that the defendant expressly aimed its tortious conduct at the forum." *Marten*, 499 F.3d at 297 (citation omitted); *IMO Indus.*, 155 F.3d at 266. Thus, "[s]imply asserting that the defendant knew the plaintiff's principal place of business was located in the forum [is] insufficient in itself to meet [the expressly aimed] requirement." *Marten*, 499 F.3d at 265.

Because personal jurisdiction must be analyzed separately for each claim, *see Marten*, 499 F.3d at 296, the Court will assess whether it has specific jurisdiction over each of Genesis's claims (all of which are intentional torts) in turn.

### Count 1: Tortious Interference

First, Genesis brings a tortious interference claim, alleging that Karim tortiously interfered with Genesis's employment contracts and its laboratory agreement with Redwood. (Doc. No. 25 ¶¶ 26–27.)  Genesis argues that this Court has personal jurisdiction over Karim in connection with this claim because Karim directed her solicitations of Myles, Brown, and Rox into Pennsylvania, through "computer and telephonic equipment that was based in Pennsylvania," in order to "usurp[]" information that "could only be accessed at the Plaintiff's business premises in Langhorne, Pennsylvania."  (Doc. No. 30 ¶ 20; Doc. No. 30-2 ¶ 32.)  Karim replies that "[s]he has never been to Pennsylvania."[5]  (Doc. No. 29 at 5.)  The Court applies the effects test in assessing whether it has personal jurisdiction over Karim in connection with the tortious interference claim.

The first prong of the effects test is clearly met:  tortious interference is an intentional tort.  *See M3 USA Corp. v. Hart*, 516 F. Supp. 3d 476, 500–01 (E.D. Pa. 2021).  The second prong of the effects test, whether the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered, is also clearly met.  Genesis asserts that the principal harm emanating from the alleged tortious interference is the interference with the employment contracts and the loss of business from Redwood.  (Doc. No. 25 ¶¶ 30–31.)  Given that Genesis's principal place of business is in Pennsylvania, we conclude that the harm from these alleged disruptions was felt most acutely in Pennsylvania, thus making Pennsylvania the focal point of the harm suffered by the plaintiff as a result of the tort.  *See M3 USA Corp.*, 516 F. Supp. 3d at 501.

---

[5] Karim admits that she passed through Pennsylvania thirteen years ago on a layover at the Philadelphia airport.  (Doc. No. 29 at 5.)  Genesis does not argue that visit is a basis for the Court's jurisdiction over Karim.

Finally, the third prong of the effects test asks the Court to consider whether Karim expressly aimed her tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity. *Id.* Because Genesis alleges two separate acts of tortious interference—interference with the employment contracts and interference with the Redwood contract, the Court must analyze those acts separately.

We consider the claim that Karim tortiously interfered with Myles's, Brown's, and Rox's employment contracts first. As an initial matter, we note the paucity of detail provided by Genesis with respect to the supposed tortious conduct aimed at the forum. In its amended complaint, Genesis provides virtually no information about the frequency, number, or nature of Karim's alleged communications aimed at Pennsylvania. Nevertheless, the Court must accept Genesis's allegations as true, and draw all inferences in its favor, including its assertions that Karim's communications with these employees necessarily passed through computer and telephonic equipment located in Pennsylvania and that Karim *knew* that this information was stored in Genesis's Pennsylvania facilities.[6] (Doc. No. 30 ¶¶ 20–21.) Accordingly, the Court will consider whether those communications and their connection to Pennsylvania satisfy the minimum contacts analysis and suffice as conduct "expressly aimed" at Pennsylvania.[7]

Here, Genesis alleges that Karim "would have known, or should have known" that during

---

[6] Because we are required to draw all inferences in favor of Genesis, the Court finds that Genesis's allegation that the communications passed through "computer and telephonic equipment" implies that the communications were of an email (or similar) and/or telephonic nature.

[7] The Third Circuit has held that "mail and telephone communications sent by a defendant into the forum may count toward the minimum contacts that support jurisdiction." *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993). "[W]here an asserted basis for personal jurisdiction is email communications, a threshold question that should be asked [is whether] . . . facts incident to the communications [indicate] that the sender of the emails was aware that the recipient was located in or would be accessing the emails from the forum state." *Christie v. Nat'l Inst. for Newman Stud.*, 258 F. Supp. 3d 494, 505 (D.N.J. 2017).

the time of her alleged solicitations, Myles, Brown, and Rox were employed by Genesis, a company located in Pennsylvania. (*Id.* ¶ 20.) Genesis also provides a sworn statement by Abraham Miller, its Vice President for Research and Development, in which he avers that "Ms. Karim had to contact [Genesis's] employees in Pennsylvania on several occasions, utilizing computer and telephonic equipment based in Pennsylvania." (Doc. No. 30-1 ¶ 28.) In fact, Genesis has provided an email written by Karim suggesting—though indirectly—the existence of at least some contact with Myles, Brown, and Rox, as well as providing evidence that Karim was at least aware of some relationship between those employees and Genesis. (*See* Doc. No. 30-7 ("[A]ll this is because I agreed to help them in resolving their misunderstanding between Genesis and them.").)[8]

This is sufficient to show that the Court has personal jurisdiction over Karim in connection with the claim that she tortiously interfered with Myles's, Brown's, and Rox's employment contracts. *See Remick*, 238 F.3d at 260 (holding that the district court had specific jurisdiction over the defendant in tortious interference case where the defendant allegedly interfered with contract between lawyer and client and both lawyer and client were located in Pennsylvania). *Contra M3 USA Corp.*, 516 F. Supp. 3d at 501 (declining to exercise personal jurisdiction in tortious interference claim where neither the defendant nor the employees he allegedly tried to poach were located in Pennsylvania).

But the analysis for the third prong is different for the claim that Karim tortiously interfered with Genesis's contract with Redwood. Redwood is a Texas-based company, and even though Karim allegedly reached into Pennsylvania to obtain Genesis's client list, which allegedly led her to Redwood, those contacts are not sufficient to establish specific jurisdiction.

---

[8] Karim does not dispute the authenticity of this email.

*ABC Medical Holdings, Inc. v. Home Medical Supplies, Inc.*, No. CIVIL ACTION NO. 15-2457, 2015 WL 5818521 (E.D. Pa. Oct. 6, 2015), is instructive.  In *ABC Medical Holdings*, the plaintiff brought a tortious interference claim against a former employee who allegedly took the plaintiff's customer list and attempted to divert customers to his new company, a direct competitor of the plaintiff's.  *Id.* at *5.  The plaintiff was headquartered in Pennsylvania, but the defendant resided in Colorado, and all of the customers the defendant sought to divert were located in Colorado.  *Id.*  The court explained that it lacked personal jurisdiction over the defendant because the defendant's conduct was directed at Colorado, not Pennsylvania, and "the mere fact that [the defendant] w[as] aware that [the plaintiff] was headquartered in Pennsylvania is not sufficient to show that [the defendant's] alleged tortious conduct was expressly aimed at Pennsylvania."  *Id.*; *see also IMO Indus.*, 155 F.3d at 267 (concluding that the district court lacked personal jurisdiction over the defendant because, even though the defendant knew that the New Jersey-based plaintiff may face harm and made phone calls to New Jersey, the defendant's allegedly tortious interference was directed at a deal being negotiated outside of New Jersey); *TorcUp, Inc. v. Aztec Bolting Servs, Inc.*, 386 F. Supp. 3d 520, 526 (E.D. Pa. 2019) (holding that the court lacked specific jurisdiction where the defendant allegedly tortiously interfered with the plaintiff's contract with a Texas-based corporation because "the alleged conduct that led to the alleged harm [i.e., poaching plaintiff's customers] was directed at Texas, not Pennsylvania").

That is exactly the situation here.  Even though Genesis's headquarters are in Pennsylvania, its records are maintained in Pennsylvania, and any alleged harm to Genesis is being felt in Pennsylvania, Redwood is based in Texas, and Karim's alleged interference with the Redwood contract occurred in Texas, not Pennsylvania.  Thus, the Court lacks personal jurisdiction over the tortious interference claim to the extent it arises out of Karim's alleged

interference with the Redwood contract.

In sum, the Court denies the plaintiff's motion to dismiss the tortious interference claim for lack of personal jurisdiction to the extent it arises out of the Karim's alleged interference with Myles's, Brown's, and Rox's employment contracts but grants the motion to the extent it arises out of the Karim's alleged interference with the Redwood contract.

### Count 2:  Unfair Competition

Second, Genesis brings an unfair competition claim, alleging that Karim "utilized [Myles's, Brown's, and Rox's] knowledge of confidential information concerning the Plaintiff's proprietary business practice in order to assist [Karim's] own enterprise."  (Doc. No. 25 ¶ 34.) Pennsylvania courts allow unfair competition claims where, among other things, the defendant is alleged to have improperly induced the plaintiff's employees to misappropriate trade secrets.  *See Albee Homes, Inc. v. Caddie Homes, Inc.*, 207 A.2d 768, 771–72 (Pa. 1965).

All three prongs of the effects test are satisfied with respect to this claim.  First, unfair competition is an intentional tort.  *See id.*  Second, Genesis feels the brunt of the harm from Karim's alleged misconduct in Pennsylvania, where it is headquartered.  *See M3 USA Corp.*, 516 F. Supp. 3d at 501.  Finally, Karim expressly aimed her alleged tortious conduct—i.e., improperly inducing Myles, Brown, and Rox to give her the customer list—at Pennsylvania.  She allegedly called and/or emailed with Genesis's employees, who she knew had access to Genesis's computer servers located in Pennsylvania, for the purpose of obtaining Genesis's customer list.  *See Vinco Ventures, Inc. v. Milam Knecht & Warner, LLP*, No. 5:20-cv-6577, 2021 WL 4399682, at *14–15 (E.D. Pa. Sept. 27, 2021) (holding that the defendant expressly aimed his allegedly tortious conduct at Pennsylvania by emailing with individuals in Pennsylvania in connection with the alleged wrong); *Nutrisystem.com, Inc. v. Easthaven, Ltd.*,

No. Civ. A. 00-4835, 2000 WL 1781924, at *1 (E.D. Pa. Nov. 16, 2000) (holding that the defendant was subject to personal jurisdiction in Pennsylvania because the defendant expressly aimed its conduct at Pennsylvania by emailing and calling the plaintiff in Pennsylvania); *see also Byrd v. Aaron's, Inc.*, No. C.A. No. 11-101Erie, 2012 WL 12887728, at *6 (W.D. Pa. Feb. 17, 2012) (concluding that the defendant's attempts to access computer servers located in Pennsylvania were sufficient to give rise to personal jurisdiction in Pennsylvania).  *Contra Vectra Visual, Inc. v. Hoving*, Civil Action No. 21-cv-03296, 2021 WL 4520339, at *9 (D.N.J. Oct. 4, 2021) (holding that the defendant did not expressly aim its allegedly tortious conduct at New Jersey because, although the defendant emailed with individuals in New Jersey, the confidential information the defendant allegedly misappropriated was not taken from New Jersey).

Thus, the Court denies Karim's motion to dismiss the unfair competition claim for lack of personal jurisdiction.

### Count 3:  Conversion

Third, Genesis brings a conversion claim, alleging that Karim converted Genesis's "property interests . . . the funds derived from the Redwood account[s] receivable[]."  (Doc. No. 25 ¶¶ 37–38.)  Applying the effects test, the Court finds that it lacks personal jurisdiction over Karim with respect to these claims.  Genesis satisfies the first two prongs of the test:  conversion is an intentional tort, *see Vizant*, 97 F. Supp. 3d at 636, and Genesis is headquartered in Pennsylvania, so it felt the brunt of the harm from the alleged conversion in Pennsylvania, *see M3 USA Corp.*, 516 F. Supp. 3d at 501  But Genesis has failed to plead facts showing that Karim's actions were expressly aimed at Pennsylvania.

In evaluating whether a defendant's allegedly converting conduct allows the court to

exercise personal jurisdiction over him or her, courts focus on the relationship between the defendant's contacts with Pennsylvania and the property that was converted. *E.g.*, *Goodway Grp. v. Sklerov*, Civil Action No. 18-0900, 2018 WL 3870132, at \*5–6 (E.D. Pa. Aug. 15, 2018); *Vizant*, 97 F. Supp. 3d at 635–36; *FFR SE, LLC v. Sanborn*, Civil Action No. 14-5439, 2015 WL 3970923, at \*6 (E.D. Pa. June 30, 2015). When the property is located in the forum state, *see FFR SE, LLC*, 2015 WL 3970923, at \*6, or where the property is more diffuse but still tied to the forum state, *see Vizant*, 97 F. Supp. 3d at 636; *Miller v. Native Link Constr., LLC*, Civil Action No. 15-1605, 2017 WL 3536175, at \*28 (W.D. Pa. Aug. 17, 2017), courts will exercise personal jurisdiction over the defendant; however, when the defendant's contacts with the forum state do not directly lead to the conversion, courts will not exercise such jurisdiction, *see Goodway Grp.*, 2018 WL 3870132, at \*5–7 & n.9.

Here, the "property" which Karim allegedly converted is Genesis's "rights in accounts receivable from Redwood and other medical service providers."[9] (Doc. No. 25 ¶ 38.) But Karim's contacts with Pennsylvania were allegedly related to the misappropriation of Genesis's confidential customer information. Her Pennsylvania contacts are not alleged to have been directed to Redwood or other Genesis clients. Thus, unlike in those cases in which judges have exercised jurisdiction over out-of-state alleged convertors, here neither the converting activity nor the allegedly converted property is located in Pennsylvania. *See Miller*, 2017 WL 3536175, at \*31 (holding that the court lacked personal jurisdiction over a defendant in connection with alleged conversion of business opportunities where the third-party contracts with which the

---

[9] Even if the Court had personal jurisdiction over Karim related to this claim, it would be dismissed under Federal Rule of Civil Procedure 12(b)(6), as Genesis has no property interest in its customers and business. *See, e.g.*, *Brown & Brown Inc. v. Cola*, 745 F. Supp. 2d 588, 623 (E.D. Pa. 2010).

defendant allegedly interfered were located outside of Pennsylvania).  Under these circumstances, we cannot find that Karim expressly aimed her allegedly tortious conduct at Pennsylvania.

### Count 4:  Civil Conspiracy

Finally, Genesis brings a civil conspiracy claim, alleging that Karim, together with Interlab Billing and Medcurative, conspired with Myles, Brown, and Rox to obtain Genesis's proprietary accounts information.  (Doc. No. 25 ¶¶ 40–41.)  All three prongs of the effects test are satisfied with respect to this claim, as it relates to the conspiracy to wrongfully obtain proprietary information.[10]  Civil conspiracy is a tort, *see Aardvark Event Logistics, Inc. v. Bobcar Media LLC*, CIVIL ACTION NO. 16-5873, 2017 WL 59059, at *5 (E.D. Pa. Jan. 5, 2017), and, because Genesis is headquartered in Pennsylvania, it bore the brunt of any alleged harm in Pennsylvania, *see M3 USA Corp.*, 516 F. Supp. 3d at 501.

As to the third prong, Karim's conduct in contacting Myles, Brown, and Rox to obtain proprietary information stored on Genesis's computer servers located in Pennsylvania is enough to show that her actions were specifically directed to the forum.  *See CDI Int'l, Inc. v. Marck*, No. Civ.A. 04-4837, 2005 WL 146890, at *3–4 (E.D. Pa. Jan. 21, 2005) (holding that the defendant was subject to personal jurisdiction in Pennsylvania where the defendant "conspired to steal CDI's trade secrets by directing Cloud, a Pennsylvania company, to rummage through CDI's garbage in Pennsylvania"); *see also Crossroads Techs., Inc. v. Achieve Servs. Holdings, LLC*, Case No. 19-cv-0955, 2019 WL 5862161, at *4 (E.D. Pa. Nov. 7, 2019) (concluding that the defendants' regular transmission of data to servers located and maintained in Pennsylvania

---

[10] To the extent this claim arises from Karim's misappropriation of the Redwood account, the Court finds that it lacks personal jurisdiction over Karim in connection with this claim because Karim is a resident of Missouri and Redwood is based in Texas.  *See supra* Section II.B, Count 3.

was sufficient to establish personal jurisdiction in Pennsylvania).  Moreover, these communications are the basis of the tortious interference and unfair competition claims, and we have already found that we have personal jurisdiction over Karim in connection with those claims.  *See Vizant*, 97 F. Supp. 3d at 636 ("Assuming that we do have personal jurisdiction as to defendants with respect to [the underlying intentional tort] claims, we necessarily have jurisdiction as to the conspiracy claim as well.")

Even if Karim's communications were not sufficient on their own, the Court would still enjoy personal jurisdiction over Karim.  In cases where a conspiracy is alleged, courts look to the standard of co-conspiracy jurisdiction.  *See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 846 F. Supp. 374, 379 (E.D. Pa. 1994), *aff'd*, 107 F.3d 1026 (3d Cir. 1997).[11]  While not an entirely separate analysis of a traditional minimum contacts personal jurisdiction analysis, co-conspirator jurisdiction instead looks not only at the defendant's forum contacts, but also at those of the defendant's "resident" co-conspirators.  *Id*.  Courts then impute "the contacts of the 'resident' co-conspirator over whom it has jurisdiction to the 'foreign' co-conspirator to see if there are sufficient contacts to exercise jurisdiction over the latter."  *Id*.  For there to be sufficient contacts between the "resident" co-conspirators and the forum, however, "there must . . . be substantial acts in furtherance of the conspiracy within the forum, of which the out-of-state co-conspirator was or should have been aware."  *Id*. at 379–80 (internal citations omitted).

Here, Genesis alleges that Karim, the "foreign co-conspirator conspired with Myles, Brown, and Rox to access Genesis's record systems and obtain proprietary account information so she could poach clients from Genesis.  (Doc. No. 25 ¶¶ 40–41.)  Genesis asserts that Myles,

---

[11] "While the Third Circuit Court of Appeals has not expressly adopted [the co-conspirator] theory of jurisdiction, district courts in this circuit have adopted it under 'certain circumstances.'"  *Mr. Sandless Franchise, LLC v. Karen Cesaroni LLC*, 498 F. Supp. 3d 725, 734 (E.D. Pa. 2020) (quoting *Doe v. Hesketh*, 15 F. Supp. 3d 586, 595 (E.D. Pa. 2014)).

Brown, and Rox "had full access to Genesis's computer servers, as well as . . . proprietary business information," which was all "maintained in a secure computer room located on the premises of Genesis's business in Langhorne, Pennsylvania." (Doc. No. 30-1 ¶¶ 11–13.) Moreover, and as discussed above, Karim, by her own admission, was aware that those employees worked for Genesis, (Doc. No. 30-7), and put in calls and/or emails to these employees knowing they had access to Genesis's computer servers in Pennsylvania (Doc. No. 25 ¶ 21). Taking as true the allegation that Karim conspired with Myles, Brown, and Rox to steal Genesis's proprietary information (Doc. No. 25 ¶ 41), it was foreseeable that Myles, Brown, and Rox would take these substantial steps towards furthering the conspiracy within Pennsylvania— steps of which Karim was or should have been aware.

Therefore, the Court can exercise jurisdiction over Karim with respect to the civil conspiracy claim, and Karim's motion to dismiss this claim for lack of personal jurisdiction is denied.

*     *     *

In sum, the Court grants Karim's motion to dismiss the conversion claim (Count 3) for lack of personal jurisdiction but denies Karim's motion with respect to the tortious interference, unfair competition, and civil conspiracy claims (Counts 1, 2, and 4) to the extent they arise out of Karim's alleged interference with the employment contracts.

### C.      Venue

Karim also argues that the first amended complaint must be dismissed because the Eastern District of Pennsylvania is not a proper venue.

In deciding a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), we again must accept all of Genesis's allegations as true, unless those

allegations are contradicted by Karim's declarations.  *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012); *N. Am. Commc'ns, Inc. v. Eclipse Acqui Inc.*, Civil Action No. 3:17-167, 2018 WL 651795, at *4 (W.D. Pa. Jan. 31, 2018).  Unlike jurisdictional challenges, when challenging venue, the defendant bears the burden of showing improper venue.  *Bockman*, 459 F. App'x at 160.  Where, as here, jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1391 governs venue.  Under § 1391(b), a plaintiff may bring a case in:

> (1) a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)–(3).  Here, given that Defendants reside in Missouri, the only way venue is proper in the Eastern District of Pennsylvania is if a substantial part of the events or omissions giving rise to Genesis's claims occurred in this District.

As the Third Circuit explained in *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291 (3d Cir. 1994), "the statutory language of [§ 1391] favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be 'substantial.'  Events or omissions that might only have some tangential connection with the dispute in litigation are not enough."  *Id.* at 294.  "Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute."  *Id.*  Further, in determining whether a substantial part of the events or omissions giving rise to a cause of action occurred in a particular district, "[t]he test . . . is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'"  *Id.*; *see also Bockman*, 459 F. App'x at 160.

19

Even so, "Section 1391(b) does not require this Court to determine the 'best' forum, or 'the forum with the most substantial events.'  In fact, venue may be proper in more than one district.  It is necessary 'only that a substantial part of the events occurred here.'"  *Lannett Co., Inc. v. Asherman*, Civil Action No. 13-2006, 2014 WL 716699, at *4 (E.D. Pa. Feb. 24, 2014) (citations omitted); *see also id.* at *3 ("Because § 1391 does not require a majority of the events take place here, nor that the challenged forum be the best forum for the lawsuit to be venued, it is irrelevant that a more substantial part of the events took place in another district, as long as a substantial part of the events took place in [this] district as well.  At bottom, the substantiality inquiry is more qualitative than quantitative." (cleaned up)); *Leone v. Cataldo*, 574 F. Supp. 2d 471, 483–84 (E.D. Pa. 2008) ("'The fact that substantial activities took place in district B does not disqualify district A as proper venue as long as substantial activities took place in A, too.  Indeed, district A should not be disqualified even if it is shown that the activities in district B were more substantial, or even the most substantial.'" (internal citations omitted)).  When deciding venue, a court "does 'not [look] to a single triggering event prompting the action, but to the entire sequence of events underlying the claim.'"  *Leone*, 547 F. Supp. 3d at 483–84 (quoting *Uffner v. La Reunion Francaise*, 244 F.3d 38, 42 (1st Cir. 2001)).

"[V]enue must be proper for each claim in a case with multiple claims."  *Lomanno v. Black*, 285 F. Supp. 637, 641 (E.D. Pa. 2003) (quoting *Phila. Musical Soc'y, Local 77 v. Am. Red'n of Musicians of the U.S. & Can.*, 812 F. Supp. 509, 517 (E.D. Pa. 1992)).  Venue is not necessarily proper for one claim simply because it is proper for another claim.  *Id.*  Karim argues that venue is improper for all of the claims because she resides in Missouri and has never visited Pennsylvania and a substantial portion of the alleged acts giving arise to the tortious interference claim did not occur in Pennsylvania.  (Doc. No. 29 at 5.)  Defendants respond that a substantial

portion of all of the claims occurred within the Eastern District because Karim solicited

Genesis's employees who provided proprietary information to Karim after accessing it from

computer servers in Pennsylvania, and the harm was felt in Pennsylvania.  (Doc. No. 30 ¶ 57.)

The Court considers whether venue is proper for each of the surviving claims in turn.

### Count 1: Tortious Interference

The Eastern District is a proper venue for Genesis's surviving tortious interference

claim.[12]  (Doc. No. 25 ¶ 26.)  This claim arises out of Karim's alleged emails and phone calls

soliciting Myles, Brown, and Rox.  Although Karim was not located in Pennsylvania when she

made these communications, she knew that she sent these phone calls and emails into

Pennsylvania (Doc. No. 30 ¶ 20) and that the employment contracts with which she allegedly

interfered were between employees and their Pennsylvania-based employer (Doc. No. 25 ¶ 26).

Karim also knew that the information she sought to receive in violation of the employment

agreements (i.e., the customer lists) was located on the employer's computer servers in

Pennsylvania.  (*Id.* ¶ 28.)  These events constitute a "substantial part" of Genesis's tortious

interference claims against Karim.  *See Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1,

12 (1st Cir. 2009) (holding that venue was proper in Rhode Island where the plaintiff was

headquartered in Rhode Island, the employment agreement with which the defendant allegedly

interfered was entered into in Rhode Island, the trade secrets the defendant allegedly

misappropriated were located in Rhode Island, and the harm was felt in Rhode Island.); *Optos,*

*Inc. v. Topcon Med. Sys., Inc.*, 777 F. Supp. 2d 217, 237 (D. Mass. 2011) (holding that venue

was proper in Massachusetts where the employee accessed trade secrets from Massachusetts

---

[12] The tortious interference claim was dismissed for lack of personal jurisdiction to the extent it arises out of Karim's alleged interference with the Redwood contract.  *See supra* Section II.B.

computer servers in violation of his employment agreement). *Contra Strategic Learning, Inc. v. Wentz*, No. Civ. A. 04-4341, 2005 WL 241182, at *4 (E.D. Pa. Feb. 1, 2005) (holding that the Eastern District was not the proper venue for a tortious interference claim because the client with whose contract the defendant allegedly interfered was not located in the Eastern District and the statements that caused the alleged interference were spoken in another state).

Because this District is a proper venue for the surviving tortious interference claim, the Court denies Karim's motion to dismiss for improper venue as to this claim.

### Count 2:  Unfair Competition

Likewise, this District is a proper venue for Genesis's unfair competition claim.  (Doc. No. 25 ¶¶ 33–35.)  The unfair competition claim is based on Karim's wrongful acquisition of proprietary client information (which she knew to be located in Pennsylvania) from Myles, Brown, and Rox (who she knew worked for a business headquartered in Pennsylvania).  (Doc. No. 25 ¶¶ 33–35.)

Even though Karim was located in Missouri when she allegedly asked Myles, Brown, and Rox for customer information, they accessed the confidential customer information from the Pennsylvania headquarters, so a "substantial portion" of the unfair competition claim took place in this judicial district.  *See Goodard Sys., Inc. v. Overman*, Civil Action No. 12–5368, 2013 WL 159933, at *4 (E.D. Pa. Jan. 14, 2013) (concluding that venue was proper in the Eastern District where the trade secrets that the defendant allegedly misappropriated originated from the plaintiff's headquarters in Pennsylvania even though the defendant intended to use the misappropriated trade secrets in Florida (citing *Paul Green Sch. of Rock Music Franchising v. Rock Nation, LLC*, Civil Action No. 08–cv–4503, 2009 WL 129740 (E.D. Pa. Jan. 13, 2009)). *Contra TJF Assocs., LLC v. Kenneth J. Rotman & Allianex, LLC*, No. Civ. A. 05-705, 2005 WL

1458753, at *7 (E.D. Pa. June 17, 2005) (holding that venue was not proper in Pennsylvania where the alleged misappropriation of trade secrets arose out of information alleged to have been disclosed in California).  Myles, Brown, and Rox's retrieval of the customer lists is not an incidental event with only a tangential connection to the dispute in litigation, *see Cottman*, 36 F.3d at 294; rather, it is a substantial part of the dispute being litigated in the unfair competition claim, *see CertainTeed Corp. v. Nichiha USA, Inc.*, Civil Case No. 09–CV–3932–LS, 2009 WL 3540796, at *5 (E.D. Pa. Oct. 29, 2009) (holding that venue was proper in the judicial district where the defendant allegedly obtained confidential information and trade secrets, even though the defendant attempted to use that confidential information to gain employment in a different judicial district).

Accordingly, the Court finds that the Eastern District is a proper venue in which to litigate the unfair competition claim, and Karim's motion to dismiss the unfair competition claim for improper venue is denied.

### Count 4:  Civil Conspiracy

For the same reason venue is proper in the surviving tortious interference and unfair competition claims, venue is proper in the civil conspiracy claim.  This civil conspiracy claim is based entirely upon Karim's alleged correspondence requesting that Myles, Brown, and Rox steal proprietary customer information from Genesis.  (Doc. No. 25 ¶ 41.)  Following their correspondence, these Pennsylvania-based employees accessed and shared with Karim the Pennsylvania-based proprietary information, which eventually caused the Pennsylvania-based Plaintiff, Genesis, to feel harm in Pennsylvania.  (*Id.* ¶¶ 39-42.)  Although Karim was based in Missouri and the Redwood contract was based out of Texas, the events occurring in the Eastern District are unquestionably a "substantial portion" of the events leading up to the civil conspiracy

claim.[13]  *See Goodard Sys.*, 2013 WL 159933, at *4 (concluding that venue was proper in the

Eastern District where the defendant allegedly misappropriated trade secrets that originated from

the plaintiff's headquarters in Pennsylvania); *CertainTeed Corp.*, 2009 WL 3540796, at *5

(holding that venue was proper in the judicial district where the defendant allegedly obtained

confidential information and trade secrets, even though the defendant attempted to use that

confidential information in a different judicial district).

     As such, venue is proper in this district with respect to the civil conspiracy claim, and

Karim's motion to dismiss this claim for improper venue is denied.

### D.     *Failure to State a Claim*

     Finally, Karim argues that all of the claims must be dismissed pursuant to Federal Rule of

Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

     In deciding a motion to dismiss under Rule 12(b)(6), the court must determine whether

the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Although we must accept as true the allegations in the complaint, we are not "compelled to

accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a

factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks

omitted).  In other words, a "presumption of truth attaches only to those allegations for which

there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President*

---

[13] This conclusion is bolstered by the fact that the Court has already held that it lacks personal jurisdiction over the tortious interference claim to the extent it arises out of Karim's alleged interference with the Redwood contract.  *See supra* Section II.B, Count 1.

*of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation marks and citation omitted).

"Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id*.

The Court considers Karim's arguments that Genesis has failed to state a claim with respect to each of the surviving claims in turn.

### Count 1: Tortious Interference

First, Genesis avers that Karim tortiously interfered with Myles's, Brown's, and Rox's employment contracts by offering them employment at her new companies and by requesting that they disclose confidential information.  (Doc. No. 25 ¶ 26.)

Under Pennsylvania law, to state a claim of tortious interference, a plaintiff must allege

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Kernaghan v. BCI Commc'ns, Inc.*, 802 F. Supp. 2d 590, 596 (E.D. Pa. 2011) (quoting *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 357, 384 (3d Cir. 2004)).

Genesis has stated a claim for tortious interference by alleging that (1) Karim was aware that Genesis had employment contracts with Myles, Brown, and Rox that included non-compete, non-solicitation, and confidentiality clauses; (2) Karim induced Myles, Brown, and Rox to provide her with confidential information; (3) no justifications or privileges apply because Karim specifically targeted Myles, Brown, and Rox and was not recruiting employees on the "open market"; and (4) Karim's alleged interference with the employment agreements caused Genesis harm—i.e., the loss of the Redwood contract and the disclosure of other confidential

information.  (Doc. No. 25 ¶¶ 26–31.)  *See 123 Exteriors, Inc. v. N. Star Exteriors, LLC*, CIVIL

ACTION NO. 17-4337, 2018 WL 3642221, at *8 (E.D. Pa. Aug. 1, 2018) (holding that the

plaintiff stated a tortious interference claim against competitor who allegedly induced a former

employee of the plaintiffs to misappropriate confidential information in violation of that

employee's employment agreement); *Teva Pharms. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659,

676 (E.D. Pa. 2018) (concluding that the plaintiff stated a claim for tortious interference where it

alleged that the defendant "received confidential data and trade secrets from [one of plaintiff's

employees], knowing that her sharing the information violated her employment contract");

*Acclaim Sys., Inc. v. Infosys, Ltd.*, No. Civil Action No. 13–7336, 2015 WL 4257463, (E.D. Pa.

July 14, 2015) (holding that the plaintiff stated a well-pleaded claim for tortious interference

where it alleged that the defendant wrongfully induced the plaintiff's employees to share

information in violation of non-compete agreements of which the defendant was aware, causing

the plaintiff to lose revenue from a third-party customer).

Accordingly, the Court denies Karim's motion to dismiss the tortious interference claim

for failure to state a claim.

### Count 2: Unfair Competition

Next, Genesis claims that Karim engaged in unfair competition by inducing Myles,

Brown, and Rox to provide proprietary customer information.

To state a claim for unfair competition in Pennsylvania, a plaintiff must allege that (1) the

defendant engaged in "deceptive marketing, infringement of trademark or other protectable

intellectual property, misappropriation of trade secrets, or acts or practices that are actionable

under federal or state statutes" and (2) the defendant's conduct caused "harm to the plaintiff's

commercial relations."  *M3 USA Corp.*, 516 F. Supp. 3d at 504.  The catchall provision of the

first prong encompasses a broad range of unfair practices, including the "misappropriation of the skills, expenditures and labor of another." *Pa. State Univ. v. Univ. Orthopedics, Ltd.*, 706 A.2d 863, 867 (Pa. Super. Ct. 1998). A defendant can be held liable for unfair competition "for soliciting employees with non-compete or non-solicitation agreements and inducing those employees to violate those agreements." *Sandoz Inc. v. Lannet Co.*, No. CIVIL ACTION NO. 20-3538, 2020 WL 7695960, at *7 (E.D. Pa. Dec. 28, 2020) (citing *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 211–12 (Pa. Super. Ct. 2003)).

Genesis has stated a claim for unfair competition. It alleges that Karim solicited Myles, Brown, and Rox "to utilize those employees' knowledge of confidential information concerning [Genesis's] proprietary business practices in order to assist [Defendants'] own enterprise" by "wrongfully acquir[ing] customers" such as Redwood. (Doc. No. 25 ¶¶ 34–35.) Karim's alleged inducement of confidential information from Myles, Brown, and Rox is sufficient to support a claim for unfair competition. *See M3 USA Corp.*, 516 F. Supp. 3d at 504 (concluding that the plaintiff stated a claim for unfair competition where it alleged that the defendant, a competitor, "misappropriat[ed] [the plaintiff's] trade secrets to divert [a third party's] business to [the defendant]"); *Sandoz Inc.*, 2020 WL 7695960, at *7 ("I find that the nature of [the defendant's] alleged conduct, which includes inducement of a third-party . . . to breach its agreement with [the plaintiff] and turn over confidential information, sufficiently resembles conduct prohibited as unfair competition by Pennsylvania courts.").

Thus, the Court denies Karim's motion to dismiss the unfair competition claim for failure to state a claim.

### Count 4: Civil Conspiracy

Finally, Genesis avers that Karim conspired with Myles, Brown, and Rox to obtain

Genesis's proprietary customer information and to subsequently covey the Redwood contract to her companies.  (Doc. No. 25 ¶ 41.)

Under Pennsylvania law, a claim of civil conspiracy is established when a plaintiff shows the following elements:

> (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. Proof of malice or an intent to injure is essential to the proof of a conspiracy.

*Strickland v. Univ. of Scranton*, 700 A.2d 979, 987–88 (Pa. Super. Ct. 1997).

Genesis's amended complaint sets forth a plausible claim of civil conspiracy.  First, Genesis has alleged that Karim worked with Myles, Brown, and Rox to engage in the allegedly unlawful act, misappropriating the customer information.  (Doc. No. 25 ¶ 41.)  Next, Genesis has alleged that Myles, Brown, and Rox acted on that goal by using their computer systems to access and send the customer records to Karim.  (*Id.* ¶ 40.)  Third, Genesis has alleged that it suffered actual legal damage as a result of the conspiracy—i.e., it lost the Redwood contract.  (*Id.* ¶ 42.)  And finally, Genesis has alleged that Karim, together with Myles, Brown, and Rox, acted with the intent to injure Genesis by misappropriating its proprietary information.  (*Id.* ¶ 41.)  Because the complaint includes well-pleaded allegations that go towards each of the three prongs and the intent requirement, Genesis has stated a claim for civil conspiracy.  *See Revzip, LLC v. McDonnell*, Civil Action No. 11–CV–0458, 2020 WL 1929523, at *11 (W.D. Pa. Apr. 21, 2020) (concluding that the plaintiff stated a claim of civil conspiracy where its "allegations plausibly establish that [the defendant] acted in concert with Mike, Chris, and Jake to misappropriate [the plaintiff's] trade secrets and confidential information"); *ITP, Inc. v. OCI Co.*, 865 F. Supp. 2d 672, 685 (E.D. Pa. Mar. 26, 2012) (holding that the plaintiff stated a claim for civil conspiracy

where the complaint alleged conduct, including "disclosing confidential information that would benefit [the defendants] to the detriment of [the plaintiffs]").

Because Genesis has stated a claim for civil conspiracy, Karim's motion to dismiss this claim for failure to state a claim is denied.

## III.   CONCLUSION

For the reasons above, Karim's motion to dismiss is granted as to the conversion claim (Count 3) and is denied as to the tortious interference (Count 1), unfair competition (Count 2), and civil conspiracy (Count 4) claims to the extent those claims arise out of the Karim's alleged interference with Myles's, Brown's, and Rox's employment contracts.  An appropriate order follows.